# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80246-CIV-RYSKAMP/VITUNAC

UNITED STATES OF AMERICA,

     Plaintiff,

v.

STEPHEN BROMBERG,
NEIL BROMBERG, as personal representative
of the Estate of RONDA BROMBERG,
HOUSEHOLD PROPERTIES CORP., and
OCEAN TRUST, LLC

     Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court pursuant to Defendants Household Properties Corp. ("Household Properties") and Ocean Trust, LLC's ("Ocean Trust") Motion for Summary Judgment, filed December 19, 2006 **[DE 28]**. Plaintiff, the United States of America, responded on January 29, 2007 and cross-moved for summary judgment **[DE 39]**. Defendant the Estate of Ronda Bromberg responded to Plaintiff's Motion for Summary Judgment on February 9, 2007 **[DE 40]**.[1] Household Properties and Ocean Trust responded to Plaintiff's Motion for Summary Judgment on February 12, 2007 **[DE 41]**. The Court heard oral argument on these motions on April 13, 2007. These motions are ripe for adjudication.

---

[1] The Estate of Ronda Bromberg has since disclaimed and waived any right, title or interest in the property superior to that of the United States. See Joint Stipulation of Dismissal filed in open Court on April 13, 2007 and docketed on April 18, 2007 **[DE 54]**. The Clerk of Court entered a default against Steven Bromberg on January 24, 2007 **[DE 36]** for failure to appear. The Court has entered a Final Judgment of Default against Steven Bromberg by separate order.

2

## I.   <u>BACKGROUND</u>

The United States brings this action to reduce to judgment federal income tax liabilities assessed against Stephen Bromberg for the years 1995, 1996 and 1998, to foreclose federal tax liens and to sell real property.  As of February 12, 2007 there is due and owing to the United States from Stephen Bromberg the sum of $245,361.65, plus further interest and statutory additions thereon as allowed by law.

On February 2, 1977, the Hammocks at Boca West filed its "Declaration of Condominium for the Hammocks at Boca West, a Condominium" ("Boca West Declaration") in the public records of Palm Beach County, Book 2635, Page 1810.  (United States Ex. E.) On April 24, 1984, by warranty deed filed in the public records of Palm Beach County Florida, Book 4219, Page 1246, defendants Stephen Bromberg and Ronda Bromberg acquired title to the subject real property, a condominium located at 20321 Boca West Drive, #1402, Boca Raton, FL 33434-4731.  (United States Ex. A, at 1.)  On December 1, 1989, Stephen Bromberg and Ronda Bromberg, as grantors, granted title to the property to Stephen Bromberg, as sole grantee, by warranty deed filed in the public records of Palm Beach County, Florida, Book 6276, Page 1744. (United States Ex. A, at 2-3.)

On June 13, 1997, a Notice of Federal Tax Lien was filed in the public records of Palm Beach County Florida, with respect to Stephen Bromberg's 1995 federal income tax liability. (United States Ex. D., at 1.)  On February 4, 1998, a Notice of Federal Tax Lien was filed in the

public records of Palm Beach County, Florida, with respect to Stephen Bromberg's 1996 federal income tax liability.  (United States Ex. D., at 2.)

On July 14, 1998, by amendment to the Boca West Declaration filed in the Palm Beach County public records, Book 10517, page 501, the Hammocks at Boca West changed its name to "Courtside at Boca West," and the Hammocks at Boca West Condominium Association, Inc. changed its name to "Courtside at Boca West Condominium Association, Inc."  (United States Ex. F., at 2.)

On July 23, 2002, a Notice of Federal Tax Lien was filed in the public records of Palm Beach County Florida, with respect to Stephen Bromberg's 1998 federal income tax liability. (United States Ex. D., at 3.)

On November 24, 2003, the Boca West Declaration was amended by a "Certificate of Amendment to the Declaration of Condominium for Courtside at Boca West, a Condominium and the Articles of Incorporation and By-laws for Courtside at Boca West Condominium Association, Inc." ("Boca West Amended Declaration") filed in the Palm Beach County public records, Book 16228, Page 0405.  (United States Ex. G.) The Boca West Amended Declaration modified and expanded its lienholder's interest to provide that "[t]he Association has a lien on each Condominium Parcel to secure the payment of Assessments.  The lien is effective from and shall relate back to the earliest date permitted by law, but in no event later than the date of recording of this Declaration."  (United States Ex. G., § 12.2.)

On June 24, 2005, Boca West issued a claim of lien for Stephen Bromberg's unpaid condo assessments due on October 1, 2004, November 1, 2004, January 1, 2005 and April 1, 2005, in total amount of $5,998.70.  (United States Exhibit H, at 1.)  The claim of lien was filed

4

in the Palm Beach County public records on July 6, 2005.  (United States Exhibit H, at 1.)  On

November 10, 2005, Boca West filed a complaint against Stephen Bromberg in Palm Beach

County Circuit Court to secure the foreclosure of its lien for unpaid fees relating to the property.

(United States Ex. B, at 1.)  Neither the United States nor Ronda Bromberg were listed as parties

to this action.  The United States did not receive notice of this action.  On or about March 7,

2006, the Palm Beach Circuit Court entered a Final Summary Judgment of Foreclosure in the

amount of $16,315.44 and directed the property sold pursuant to Fla. Stat. § 45.031.

On or about March 16, 2006, the United States brought this action against Stephen

Bromberg for unpaid income tax returns and joined Ronda Bromberg, Household Properties and

Ocean Trust as parties with an interest in the property.  As noted, as of February 12, 2007 there is

due and owing to the United States from Stephen Bromberg the sum of $245,361.65, plus further

interest and statutory additions thereon as allowed by law.

On April 10, 2006, Household Properties purchased the property in foreclosure for

$16,400 and received a Certificate of Title.  (United States Ex. B., at 5-7.)  Household Properties

and Ocean Trust admit that the sale was subject to federal tax liens and that the property remains

so encumbered.  On April 24, 2006, the property was transferred from Household Properties to

Ocean Trust by virtue of a quitclaim deed.  Ocean Trust is the current owner of the property.  The

Boca West lien was paid from proceeds from the April 10, 2006 foreclosure sale, and on May 30,

2006, Boca West filed a Satisfaction of Claim of Lien in the Palm Beach County public records,

Book 20397, Page 1570.  (United States Ex. H., at 2.)

The United States requests that this Court adjudge and decree that Stephen Bromberg is

indebted to the United States for unpaid federal income taxes for the years 1995, 1996 and 1998

5

in the amount of $227,095.70, plus further interest and statutory additions thereon as allowed by

law, order the foreclosure of the federal tax liens against all property and rights to property of

Stephen Bromberg including his rights in and to the property at issue in this matter, order that the

property at issue in this matter be sold in accordance with the law and practice of this Court with

the proceeds of the sale to be distributed in accordance with the findings of this Court and the

rights of the parties, and that the United States have a deficiency judgment against Stephen

Bromberg for any unpaid amount if the relief sought herein does not satisfy Stephen Bromberg's

indebtedness to the United States.  Pending before the Court are cross-motions for summary

judgment as to the priority of the liens on the property.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment "always bears the

initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986)

(quoting Fed. R. Civ. P. 56(c)).  An issue is "material" if it is a legal element of the claim under

applicable substantive law that may affect the resolution of the action.  See Anderson v. Liberty

Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if the record,

taken as a whole, could lead a rational trier of fact to find for the non-moving party.  See id., 106

6

S.Ct. at 2510.  The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof.  Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.  The moving party need not supply "affidavits or other similar materials negating the opponent's claim."  Id., 106 S.Ct. at 2552-53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).  Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings.  Id., 106 S.Ct. at 2553.  "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; 106 S.Ct. at 2552.  See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

### III.  DISCUSSION

The United States brings this action to foreclose its federal tax liens pursuant to federal law, specifically IRC § 7403.  The United States has a federal right to enforce judicially its federal tax liens pursuant to this section.  See Drye v. United States, 528 U.S. 49, 59 (1999)(quotation omitted) (in determining whether a property is subject to a federal tax lien, "state law does not bind the federal collector.").  Accordingly, this Court must look to federal law, specifically, IRC § 6323, to determine how this principle applies to lien priorities.  Priority

of federal tax liens is a question of federal law, not state law.  See United States v. Rodgers, 461

U.S. 677, 683 (1983)(quotation omitted)("[I]t has long been an axiom of our tax collection

scheme that, although the definition of underlying property interests is left to state law, the

consequences that attach to those interests is a matter left to federal law."); United States v. Nat'l

Bank of Commerce, 472 U.S. 713, 722 (1985) (quoting United States v. Bess, 357 U.S. 51, 55

(1958) (while the federal statute does not create property rights, in attaches consequences to state

law rights, and federal law governs the consequences)).  See also Aquilino v. United States, 363

U.S. 509, 513-14 (1960) ("[O]nce the tax lien has attached to the taxpayer's state-created

interests, we enter the province of federal law, which we have consistently held determines the

priority of competing liens asserted against the taxpayer's 'property' or 'rights to property'")

(citations omitted); Atl. States Constr., Inc. v. Hand, et al., 892 F.2d 1530, 1534 (11th Cir. 1990)

(same); In re Haas, 31 F.3d 1081, 1084-85, 1087 (11th Cir. 1994) (same); Southern Bank of

Lauderdale County v. IRS, 770 F.2d 1001, 1004 (11th Cir.1985) (same); In re Littleton, 177 B.R.

407, 409 (Bankr. S.D. Ga.1995) (same).

        In an action to foreclose on federal tax liens, federal law provides that the rule of "first in

time, first in right" depends on when the liens "attached to [the] property in question and became

choate."  United States v. Vermont, 377 U.S. 351, 354 (1964) (quotation omitted).  See also IRC

§ 6323(a), (h)(1).

        Household Properties and Ocean Trust assert that Boca West has a "super-lien" over all

other lienholders pursuant to Fla. Stat. § 718.116(5)(a).  The statute provides as follows:

            The Association has a lien on each condominium parcel to
            secure the payment of assessments.  Except as otherwise provided
            in subsection (1) and as set forth below, the lien is effective from

and shall relate back to the recording of the original declaration of
condominium, or, in the case of lien on a parcel located in a phased
condominium, the last to occur of the recording of the original
declaration or amendment thereto creating the parcel.  However, as
to first mortgages of record, the lien is effective from and after
recording of the claim of lien in the public records of the county in
which the condominium parcel is located.  Nothing in this
subsection shall be construed to bestow upon any lien, mortgage,
or certify judgment of record on April 1, 1992, including a lien for
unpaid assessments created herein, priority, which, by law, the lien,
mortgage, or judgment did not have before that date.

Although this statute seemingly creates a super-lien on behalf of a condominium

association for the collection of assessments, such a lien relates to priorities under Florida law.

To the extent that the United States' interest in the property arises from Steven Bromberg's

interest therein, these interests are determined by Florida law because Steven Bromberg's

interests are determined by state law.  Steven Bromberg had sole ownership of the property by

virtue of a warranty deed filed in the Palm Beach County public records on December 9, 1989.

He had ownership of the property when the federal tax liens arose from his nonpayment of

federal income taxes for the 1995, 1996 and 1998 tax years and when these notices were filed in

the Palm Beach County public records.  Because this action is brought pursuant to federal law,

priority of the federal lien in relation to other creditors' interest is determined by IRC § 6323.

See IRC § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after

demand, the amount...shall be a lien in favor of the United States...."); Nat'l Bank of Commerce,

472 U.S. at 722-23 ("Once it has been determined that state law creates sufficient interests in the

[taxpayer] to satisfy the requirements of [the statute], state law is inoperative, and the tax

consequences thenceforth are dictated by federal law.") (quotation omitted).

9

IRC § 6323 essentially codifies the "first in time, first in right" principle as to the IRS by providing that a federal tax lien does not have priority over and is not valid against a purchaser or holder of a security interest until a notice of federal tax lien has been filed.  The protection of a security interest exists only if, prior to the filing of the notice of the federal tax lien, (1) the property used as collateral is in existence, (2) the security interest is "protected under local law from the subsequent judgment" (i.e., is protected under state law), and (3) the holder of the security interest "parted with money or money's worth" to obtain a security interest.  IRC § 6323(h)(1).  To benefit from the protections of this section, a secured creditor's lien either must meet one of the "super-priority" exceptions under IRC § 6323(b)[1] for protection of certain limited interests ahead of a filed notice of federal tax lien or it must meet one of the tests under IRC § 6323(a) prior to the filing of the notice of federal tax lien.

IRC § 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."  Boca West was not a "purchaser,... mechanic's lienor, or judgment lien creditor." Accordingly, it is only necessary to examine whether it qualifies as a "holder of a security interest" in the property at the time the notices of federal tax lien were filed. Under IRC § 6323(h)(1), for a secured creditor to have a "security interest" in the property, the secured creditor's lien must be perfected under federal law prior to the filing of the notice of federal tax lien, meaning that the "identity of the lienor, the property subject to the lien, and the amount of the lien are established."  United States v. McDermott, 507 U.S. 447, 449-50 (1993) (quotation

---

[1]Boca West does not fit into any protected category under this provision.

omitted); <u>Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp.</u>, 106 F.3d 366, 368

(11th Cir.1997); <u>Haas</u>, 31 F.3d at 1085; <u>Atl. States Constr.</u>, 892 F.2d at 1534-35.  Household

Properties and Ocean Trust cite <u>Bessemer v. Gersten</u>, 381 So.2d 1344, 1348 (Fla. 1980), which

held that a lien imposed for failure to pay a recreational assessment fee related back to the date of

the recording of the declaration of the restriction, as an example of the application of the relation

back doctrine.  This Court need make no ruling as to whether the Florida statute actually allows a

condominium association lien to take priority over a federal tax lien, as the Supremacy Clause

requires the Court to apply federal law to determine priority.  The Eleventh Circuit has rejected

the idea that Boca West's interest "relates back" to the date of the filing of the condominium

declaration.  <u>See</u> <u>Haas</u>, 31 F.3d at 1091 (citing Treas. Reg. § 301.6323(h)-1(a)(2) (1976) ("[T]he

Treasury Regulations forbid application of a relation back principle to award an unperfected lien

priority over the tax lien.").  The relevant regulation provides as follows:

> [A] security interest is deemed to be protected against a
> subsequent judgment lien on-
> (A) The date on which all actions required under local law to
> establish the priority of the security interest against a judgment lien
> have been taken or
> (B) If later, the date on which all required actions are deemed
> effective under local law, to establish the priority of the security
> interest against a judgment lien.
> For purposes of this subdivision, the dates described in (A),
> and (B) of this subdivision (i) shall be determined without regard
> to any rule or principle of local law which permits the relation back
> of any requisite action to a date earlier than the date on which the
> action is performed....

Treas. Reg. § 301.6323(h)-1(a)(2)(i).  Significantly, Stephen Bromberg had not yet failed to

make the payments for which Boca West's claim of lien was filed, nor was the amount of such

lien established prior to the filing of the federal tax lien.  Consequently, Boca West did not hold a

"security interest" in the property.  As a result, the federal tax liens are valid against and have priority over Boca West's lien.

The interest of Household Property and Ocean Trust is also inferior to that of the United States.  Under Florida law, the foreclosure purchaser "become[s] subrogated to all the rights" of the foreclosing party.  Quinn Plumbing Co. v. New Miami Shores Corp., 129 So. 690, 692 (Fla. 1930); Abdoney v. York, 903 So.2d 981, 984 (Fla. 2d DCA 2005).  Household Properties purchased the property at Boca West's foreclosure sale, thus, under Florida law, Household Properties stepped into Boca West's position and assumed its rights in the property for purposes of determining priorities.  As a subsequent purchaser of the property, Ocean Trust assumes the same rights as Household Properties.  Subsection 6323(i)(2) of the IRC provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324."  Because Boca West holds a junior lien interest to the United States' federal tax liens, Household Properties' and Ocean Trust's interests are also junior to those of the United States.

As the senior lienholder, the United States may foreclose its lien on the property even after Boca West's foreclosure sale.  IRC § 7425(a) provides that if the United States is not joined as a party to a civil action to foreclose a lien on property, and the United States has or claims a federal tax lien on such property and has filed a notice of federal tax lien in the county in which the property is situated prior to commencement of the foreclosure action, then the sale "shall be made subject to and without disturbing the lien of the United States."  Here, Household Properties and Ocean Trust admit that the United States was not joined to, or provided notice of, Boca West's foreclosure action or sale of the property.  As a result, the United States' federal tax

12

liens are undisturbed by the foreclosure and still attach to property.  See IRC § 7425(a);

Lauderdale, 770 F.2d at 1003-04.

Nor may Household Properties and Ocean Trust force the United States to redeem the

property.  28 U.S.C. § 2410(d), cited by Household Properties and Ocean Trust, merely outlines

what amount should be paid should the United States choose to redeem and does not grant these

entities authority to force the United States to take such action.  The cited case law is also

distinguishable.  In Equity Mortgage Corp. v. Loftus, 504 F.2d 1071, 1074 (4th Cir. 1974), the

United States received notice of the mortgagee's foreclosure sale.  Bie v. Hulet, 5 So.2d 457 (Fla.

1942), was decided before the passage of the Federal Tax Lien Act of 1966, which created IRC §

7425.

Nor may Household Properties and Ocean Trust seek reimbursement of their expenses in

this action.  As noted, these entities' interests are subject to the United States' lien.  As of

February 6, 2006, Steven Bromberg's outstanding federal income tax liabilities for the 1995,

1996 and 1998 tax years totals $245,361.65, plus further interest and statutory additions thereon

as allowed by law.  The sale of the property is unlikely to garner sufficient proceeds to satisfy

these debts, and there will be no funds remaining for junior creditors, including Household

Properties and Ocean Trust.  Household Properties and Ocean Trust took a calculated risk in

purchasing encumbered property.  Notices of the federal tax liens were validly filed in the Palm

Beach County public records and were easily discoverable.

## IV.  CONCLUSION

THE COURT, having considered the parties' written submissions and oral arguments

13

and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that Household Properties and Ocean Trust's Motion for Summary Judgment, filed December 19, 2006 **[DE 28]**, is DENIED. The United States' Cross-Motion For Summary Judgment, filed January 29, 2007 **[DE 39]**, is GRANTED. Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 20th day of April, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE